# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PANAGIOTA APOSTOLIDIS,               :
                                     :
         Plaintiff                   : DOCKET NO: 1:22-CV-02026
v.                                   :
                                     :
HERSHEY ENTERTAINMENT &              :
RESORTS COMPANY d/b/a                :
MELTSPA BY HERSHEY,                  :
SHIAN WING, AND SAMANTHA             :   Jury Trial Demanded
FISHER                               :
                                     :
         Defendants                  :
                                     :

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, PANAGIOTA APOSTOLIDIS ("Apostolidis"), by and through her

undersigned attorney, Peggy M. Morcom, Esquire, and Morcom Law, LLC, files

this Amended Complaint against Defendant, HERSHEY ENTERTAINMENT &

RESORTS COMPANY d/b/a MELTSPA BY HERSHEY ("HERCO"), for

violations of the Americans with Disabilities Act of 1990 (as amended) ("ADA"),

42 U.S.C. § 12101, *et seq.;* Pennsylvania Wage Payment and Collection Law

("PWPCL"), 43 Pa.Stat.Ann. § 2601.1, *et seq.*; Family Medical Leave Act

("FMLA"), 29 U.S.C. § 2601, *et seq.*; the Pennsylvania Human Relations Act

("PHRA"), 43 P.S. § 951, *et seq.*; retaliation, and defamation. Additionally,

Plaintiff files this Amended Complaint against SHIAN WING ("Wing"), and

SAMANTHA FISHER ("Fisher") for violations of the FMLA, PHRA, retaliation, and defamation.   Plaintiff alleges and avers as follows:

## JURSIDICTION AND VENUE

1.     Jurisdiction is appropriate in this Court under 28 U.S.C. §1331 and §1367.

2.     Venue is proper because all parties reside or do business in this jurisdiction and all unlawful employment practices complained of occurred in this District.

3.     On February 17, 2022, Apostolidis dual-filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC") alleging discrimination pursuant to the PHRA and the ADA.

4.     Apostolidis exhausted her administrative remedies on September 21, 2022 when a Notice of Right to Sue was issued and was received by Apostolidis on that same date. See Exhibit "A" attached hereto.

## PARTIES

5.     Apostolidis is an adult individual residing in Palmyra, Lebanon County, Pennsylvania.

6.     Hershey Entertainment & Resorts Company (hereinafter "HERCO"), is a Pennsylvania corporation organized under the laws of the Commonwealth of

Pennsylvania, with a principal place of business at 27 W. Chocolate Avenue, Hershey, Pennsylvania 17033.

7.    Hershey Entertainment & Resorts Company is doing business as MeltSpa by Hershey with a principal place of business at 11 E. Chocolate Avenue, Hershey, Pennsylvania 17033. HERCO through MeltSpa provides salon and spa treatment services.

8.    Shian Wing (hereinafter "Wing") was employed as the Director of MeltSpa by Hershey, at all relevant times herein.

9.    Samantha Fisher (hereinafter "Fisher") was employed as the Manager of MeltSpa by Hershey, at all relevant times herein.

10.    In August of 2017, Apostolidis was hired by HERCO into the position of full-time Lead Esthetician, and she was primarily responsible for providing spa treatment services to clients.

11.    On September 30, 2021, Apostolidis was terminated from her employment with HERCO.

12.    Apostolidis was at all times qualified for the position of Lead Esthetician.

13.    Apostolidis' performance at HERCO was exemplary, and she was never subjected to any form of discipline in her four years of employment.

## COUNT I
## Violations of the Americans with Disabilities Act
## (Association Discrimination As Against HERCO)

14.     Plaintiff incorporates Paragraphs 1 through 13, as though fully set forth herein.

15.     HERCO employs in excess of 100 individuals, and HERCO is an "employer" as that term is defined under the ADA.

16.     In August of 2021, an incident occurred wherein Apostolidis' teenage son, suffered a seizure. As a result of his medical condition, her son required additional assistance from Apostolidis when not in school.

17.     In August of 2021, Apostolidis informed management and Human Resources at HERCO of her son's diagnosed medical condition, epilepsy.

18.     Epilepsy is a "disability" as that term is defined under the ADA.

19.     On August 24, 2021, Apostolidis emailed Wing about contacting Human Resources for leave under the Family Medical Leave Act in order to care for her son including, but not limited to, attendance at medical appointments and medical treatment to provide care when not in school, and sport and church obligations on Sundays because he was unable to drive.

20.     Apostolidis advised Wing that she expected to return to work the following week due to scheduling of testing and medical appointments.

21.     On August 31, 2021, Apostolidis emailed Wing requesting an accommodation in the form of a schedule modification to work Monday through Friday to care for her son, an individual with a disability.  At that time, Apostolidis schedule was Sunday through Thursday.

22.     Apostolidis stated that she could remain on full time (40 hours), but she was not available to work Sunday due to her son's medical condition, treatments, and testing.

23.     Prior to March 2020, Apostolidis consistently worked a Monday through Friday schedule.

24.     On September 4, 2021, Apostolidis emailed Wing, Krystal L. King (Human Resources) ('King"), and Bill Hendrix ('Hendrix"), about considering going to part-time status to care for her son. She explained that because her son was under 18 years of age, she was required to attend every doctor's appointment with him and transport to sport and church obligations on Sundays because he was unable to drive. She also advised that her son's father resided in Phoenix, Arizona, and she was his sole provider and caretaker. She reiterated that she would be willing to work full-time on a Monday through Friday schedule.

25.     Wing informed Apostolidis that in order to maintain full-time status, she was required to work on Saturday or Sunday, with no exceptions, and she was required to work five (5) eight (8) hour days only per week.

26.     Other employees were permitted to work four (4) ten (10) hour days in order to meet a 40-hour requirement. Apostolidis offered to work four (4) ten (10) hour days, for which Wing denied her request.

27.     Apostolidis attempted to speak with Wing regarding a job accommodation, Wing responded by saying, "If you're not happy here, go work somewhere else."

28.     In September of 2021, Apostolidis contacted King, who advised her to complete the accommodation request form, which Apostolidis completed and hand-delivered to Human Resources.

29.     Apostolidis was never contacted by Human Resources to discuss her accommodation request.

30.     In September of 2021, Apostolidis was contacted by King and Wing, who indicated that she did not qualify for an accommodation under the ADA because the accommodation request was not related to her disability. They advised her that she could be off the upcoming Sunday to coordinate childcare needs.

31.     Due to HERCO being unwilling to provide any accommodation, in particular modification of schedule, Apostolidis was forced to begin looking for other work.

32.     On September 29, 2021, Apostolidis informed Fisher that she would be looking for other work to accommodate her son's care and treatment, and she

indicated that sufficient and appropriate notice would be provided to HERCO once she found new employment.

33.    On September 30, 2021, Apostolidis reported to work as scheduled. Upon entering the breakroom, she reviewed the schedule and noted that no shifts were scheduled for her to work for the following two (2) weeks, except for Monday, October 4, 2021.

34.    Apostolidis asked Fisher, why her schedule was blocked out, and Fisher informed Apostolidis that she resigned the day prior and that "Monday is your last day."

35.    Apostolidis did not resign her employment, and she advised Fisher of the same.

36.    Other employees of HERCO were not scheduled on Saturday and Sunday.

37.    When Apostolidis sought an accommodation, HERCO failed to engage in the interactive process and denied her request through Wing.

38.    When Apostolidis advised Fisher of her intent to seek other employment because of need to care for her son on weekends and attend doctor's appointments, Fisher terminated her employment without notice.

39.    The actions of HERCO, through Fisher, Wing, and King were intentional and related to Apostolidis' association with her son, an individual with a disability and his care needs.

40.    HERCO was aware of Apostolidis' son's diagnosis and medical treatment.

41.    HERCO, by and through Fisher, Wing, and Human Resources, was aware of Apostolidis' son's disability and/or perceived Apostolidis' son as suffering from a serious health condition or disability.

42.    Apostolidis sought a reasonable accommodation related to her son's medical condition and treatment, and Fisher and HERCO chose to terminate Apostolidis due to her accommodation request and association with a person with a disability.

43.    As a direct and/or proximate result of the above-described actions, Apostolidis suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

44.    As a direct and proximate result of the above-described actions, Apostolidis suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, loss of retirement benefits.

45.    As a direct and proximate result of the above-described conduct, Apostolidis suffered professional injuries including, but not limited to, her

professional reputation, professional development and loss of potential promotions, loss of retirement benefits.

## COUNT II
### Family Medical Leave Act
### (Violation and Interference with Rights as Against HERCO, Wing, and Fisher)

46.     Plaintiff incorporates paragraphs 1 through 45, as though fully set forth herein.

47.     Apostolidis was employed by HERCO for at least 12 months during the 12-month period immediately preceding her need for family medical leave, and she worked at least 1,250 hours during the 12-month period immediately preceding this need for family medical leave.

48.     Apostolidis was qualified to receive FMLA.

49.     HERCO employed 50 or more employees during Apostolidis' employment, and is an "employer" as that term is defined under the FMLA.

50.     Apostolidis was eligible to receive 12 weeks of unpaid leave per year for her son's serious health condition, a seizure disorder.

51.     A seizure disorder is a "serious health condition" as that term is defined under the FMLA.

52.     HERCO through Wing, Fisher, and King were aware of Apostolidis need for family medical leave to care for her son, who suffers from a serious health condition.

53.    Apostolidis was eligible to take 12 weeks of FMLA leave intermittently or consecutively to care for her son.

54.    HERCO failed to provide Apostolidis with the appropriate notices as required under the FMLA.

55.    HERCO through Fisher terminated Apostolidis' employment when it was aware that she required and was eligible for leave under the FMLA.

56.    Apostolidis' need for family medical leave continued from August 2021 and beyond her termination from her employment on September 30, 2021.

57.    HERCO, Fisher, Wing, and King intentionally interfered with Apostolidis' rights under the FMLA when they terminated her employment.

58.    The acts and omissions of HERCO, Wing, and Fisher, as incorporated herein, were in violation of the FMLA.

59.    The actions of HERCO, Wing, and Fisher were intentional and willful.

60.    As a direct and/or proximate result of the above-described actions, Apostolidis suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

61.    As a direct and proximate result of the above-described actions, Apostolidis suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, loss of retirement benefits.

62.    As a direct and proximate result of the above-described conduct, Apostolidis suffered professional injuries including, but not limited to, her professional reputation, professional development and loss of potential promotions, loss of retirement benefits.

## COUNT III
## VIOLATIONS OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## (PHRA as Against HERCO, Wing, and Fisher)

63.    Plaintiff incorporates paragraphs 1 through 62, as though fully set forth herein.

64.    Ms. Apostolidis is an "employee" as that term is defined under the PHRA.

65.    HERCO is an "employer" as that term is defined under the PHRA.

66.    In August of 2021, an incident occurred wherein Apostolidis' teenage son, suffered a seizure. As a result of his medical condition, her son required additional assistance from Apostolidis when not in school.

67.    In August of 2021, Apostolidis informed management and Human Resources at HERCO of her son's diagnosed medical condition, epilepsy.

68.    On August 24, 2021, Apostolidis emailed Wing about contacting Human Resources for leave under the Family Medical Leave Act in order to care for her son including, but not limited to, attendance at medical appointments and

medical treatment to provide care when not in school, and sport and church obligations on Sundays because he was unable to drive.

69.    Apostolidis advised Wing that she expected to return to work the following week due to scheduling of testing and medical appointments.

70.    On August 31, 2021, Apostolidis emailed Wing requesting an accommodation in the form of a schedule modification to work Monday through Friday to care for her son, an individual with a disability.  At that time, Apostolidis schedule was Sunday through Thursday.

71.    Apostolidis stated that she could remain on full time (40 hours), but she was not available to work Sunday due to her son's medical condition, treatments, and testing.

72.    Prior to March 2020, Apostolidis consistently worked a Monday through Friday schedule.

73.    On September 4, 2021, Apostolidis emailed Wing, Krystal L. King (Human Resources) ('King"), and Bill Hendrix ('Hendrix"), about considering going to part-time status to care for her son. She explained that because her son was under 18 years of age, she was required to attend every doctor's appointment with him and transport to sport and church obligations on Sundays because he was unable to drive. She also advised that her son's father resided in Phoenix, Arizona,

and she was his sole provider and caretaker. She reiterated that she would be willing to work full-time on a Monday through Friday schedule.

74.    Wing informed Apostolidis that in order to maintain full-time status, she was required to work on Saturday or Sunday, with no exceptions, and she was required to work five (5) eight (8) hour days per week.

75.    Other employees were permitted to work four (4) ten (10) hour days in order to meet a 40-hour requirement. Apostolidis offered to work four (4) ten (10) hour days, for which Wing denied her request.

76.    Apostolidis attempted to speak with Wing regarding a job accommodation, Wing responded by saying, "If you're not happy here, go work somewhere else."

77.    In September of 2021, Apostolidis contacted King, who advised her to complete the accommodation request form, which Apostolidis completed and hand-delivered to Human Resources.

78.    Apostolidis was never contacted by Human Resources to discuss her accommodation request.

79.    In September of 2021, Apostolidis was contacted by King and Wing, who indicated that she did not qualify for an accommodation under the ADA because the accommodation request was not related to her disability. They advised her that she could be off the upcoming Sunday to coordinate childcare needs.

80.    Due to HERCO being unwilling to provide any accommodation, in particular modification of schedule, Apostolidis was forced to begin looking for other work.

81.    On September 29, 2021, Apostolidis informed Fisher that she would be looking for other work to accommodate her son's care and treatment, and she indicated that sufficient and appropriate notice would be provided to HERCO once she found new employment.

82.    On September 30, 2021, Apostolidis reported to work as scheduled. Upon entering the breakroom, she reviewed the schedule and noted that no shifts were scheduled for her to work for the following two (2) weeks, except for Monday, October 4, 2021.

83.    Apostolidis asked Fisher, why her schedule was blocked out, and Fisher informed Apostolidis that she resigned the day prior and that "Monday is your last day."

84.    Apostolidis did not resign her employment, and she advised Fisher of the same.

85.    Other employees of HERCO were not scheduled on Saturday and Sunday.

86.    When Apostolidis sought an accommodation, HERCO failed to engage in the interactive process and denied her request through Wing.

87.    When Apostolidis advised Fisher of her intent to seek other employment because of need to care for her son on weekends and attend doctor's appointments, Fisher terminated her employment without notice.

88.    The actions of HERCO, through Fisher, Wing, and King were intentional and related to Apostolidis' association with her son, an individual with a disability and his care needs.

89.    HERCO was aware of Apostolidis' son's diagnosis and medical treatment.

90.    HERCO, by and through Fisher, Wing, and Human Resources, was aware of Apostolidis' son's disabilities and/or perceived Apostolidis' son as suffering from a serious health condition.

91.    Apostolidis sought a reasonable accommodation related to her son's medical condition and treatment, and Fisher and HERCO chose to terminate Apostolidis due to her accommodation request and association with a person with a disability.

92.    As a direct and/or proximate result of the above-described actions, Apostolidis suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

93.    As a direct and proximate result of the above-described actions, Apostolidis suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, loss of retirement benefits.

94.    As a direct and proximate result of the above-described conduct, Apostolidis suffered professional injuries including, but not limited to, her professional reputation, professional development and loss of potential promotions, loss of retirement benefits.

## COUNT IV
## Pennsylvania Wage Payment and Collection Law
## 43 Pa.Stat.Ann. § 2601.1, *et seq.*
## (As Against HERCO)

95.    Plaintiff incorporates paragraphs 1 through 94, as though fully set forth herein.

96.    HERCO is an "employer" within the meaning of the PWPCL and are therefore subject to the PWPCL.

97.    On March 16, 2020, HERCO temporarily closed MeltSpa due to the COVID-19 pandemic, and HERCO did not re-open MeltSpa until July of 2020.

98.    As a result of the COVID-19 pandemic, in or about March 2020 until October 2020, Apostolidis remained employed with HERCO but in a furloughed status, and she continued to receive her full medical benefits during this period of time.

99.    Upon returning to work, many businesses, were faced with the requirements of new COVID protocols for the safety of its employees and the public, including HERCO and MeltSpa.

100.    Upon returning to work in October of 2020, Apostolidis expressed to management several concerns regarding HERCO and MeltSpa not following COVID protocol, including but not limited to, a lack of extra cleaning products, check-in issues, and individuals not social distancing in the facility.

101.    In November of 2020, Apostolidis asked to speak with Jason White, Managing Director of Corporate Safety and Security ("White"), but Kerri Stoy, former manager advised her that Wing directed Apostolidis not to speak to White.

102.    In late December 2020 and/or mid-January of 2021, Apostolidis engaged White in a telephone conversation regarding her concerns regarding violations of COVID protocols at MeltSpa.

103.    White advised Apostolidis not to tell anyone they spoke regarding her complaints because it would not be good for her continued employment.

104.    In February of 2021, Wing advised full-time employees, including Apostolidis, that a "disconnect week" was being given to them by HERCO for their hard work during the COVID-19 pandemic. Wing informed employees that the "disconnect week" would encompass a paid week off.

105.    Apostolidis never received her "disconnect week" as promised by HERCO.

106.    In March of 2021, Apostolidis requested a meeting with King because she was refused the "disconnect week" while management and a concierge person were provided the "disconnect week".

107.    In or about March or April 2021, Apostolidis was able to obtain a meeting with King and Hendrix.  During the meeting, Apostolidis complained about the failure to provide the "disconnect week" as promised and the failure of MeltSpa to comply with COVID-19 protocols.

108.    HERCO failed to pay promised benefits or "fringe benefits," which are considered "wages" as defined in Section 2.1 of the PWPCL.

109.    HERCO maintains a policy that requires clients of MeltSpa to pre-pay a tip for services in the amount of 20% of the value of the services provided.

110.    During Apostolidis employment, she only received 17% of the tip charged to clients for services rendered by her.

111.    Apostolidis complained to management regarding only receiving 17% of the 20% tip received.  Management advised that 1% of the tip was directed to the concierge staff (who do not provide services in the spa).  Management did not account for the remaining 2% of the tip received from clients.

112.   Apostolidis believes and avers that HERCO and MeltSpa failed to pay the entire tip income received from clients for services rendered by Apostolidis during her employment with MeltSpa.

113.   The acts and omissions of HERCO and MeltSpa for failure to provide or pay fringe benefits and wages, is a violation of Pennsylvania Wage Payment and Collection Law.

114.   As a direct and proximate result of the above-described actions, Apostolidis suffered financial injury in the form of lost tip income.

**COUNT V**
**Retaliation**
**(Against HERCO Under the ADA, FMLA, and PWPCL)**
**(Against Wing and Fisher Under the FMLA and PHRA)**

115.   Plaintiff incorporates paragraphs 1 through 114, as though fully set forth herein.

116.   Apostolidis engaged in protected activity under the ADA, FMLA, PHRA, and PWPCL.

117.   In October of 2020, Apostolidis complained about MeltSpa's failure to follow COVID protocols, including a lack of extra cleaning products, check-in issues, and lack of social distancing at the facility.

118.   In late December 2020 and/or mid-January of 2021, Apostolidis engaged White in a telephone conversation regarding her concerns regarding violations of COVID protocols at MeltSpa.

119.    White advised Apostolidis not to tell anyone they spoke regarding her complaints because it would not be good for her continued employment.

120.    In or about March or April 2021, Apostolidis obtained a meeting with King and Hendrix.  During the meeting, Apostolidis complained about the failure to provide the "disconnect week" as promised and the failure of MeltSpa to comply with COVID-19 protocols.

121.    Apostolidis complained to Human Resources and management regarding HERCO's failure to pay/provide the "disconnect week" to employees at MeltSpa by Hershey, which was relayed to employees as part of employee retention between October 2020 and August 2021.

122.    No action was taken by HERCO to correct the failure to follow COVID protocols at MeltSpa.

123.    No action was taken by HERCO to correct the failure to provide the "disconnect week" benefit to employees, as promised.

124.    In August of 2021 through to her termination, Apostolidis sought leave under the Family Medical Leave Act to care for her son, who suffered from a "serious health condition.

125.    Apostolidis sought from HERCO, Wing, and Fisher a change in her schedule to work Monday through Friday for 40 hours and no Sundays to care for her son.

126.    On September 30, 2021, Apostolidis was notified that she was terminated by Fisher, with an effective date of October 4, 2022.

127.    The actions of HERCO and its management team were in close proximity to Apostolidis' complaints regarding failure to properly pay wages and benefits, failure to follow COVID-19 protocols, and her request for benefits under the ADA, PHRA, and FMLA.

128.    Apostolidis believes Fisher and HERCO intentionally terminated her employment as a result of her complaints regarding failure to properly follow COVID-19 protocols, failure to provide promised benefits under the PWPCL, her association with an individual with a disability, and her request for benefits under the ADA, PHRA, and FMLA.

129.    As a direct and/or proximate result of the above-described actions, Apostolidis suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

130.    As a direct and proximate result of the above-described actions, Apostolidis suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, loss of retirement benefits.

131.    As a direct and proximate result of the above-described conduct, Apostolidis suffered professional injuries including, but not limited to, her

professional reputation, professional development, loss of potential promotions, and loss of retirement benefits.

### COUNT VI
### Defamation
### (As Against HERCO, Wing, and Fisher)

132.   Plaintiff incorporates paragraphs 1 through 131, as though fully set forth herein.

133.   Defendant HERCO maintains a policy in their Employee Handbook entitled "Confidentiality in the Workplace," which states:

> As an employee of HE&R, you may work with or encounter information and/or matters that are considered confidential. Confidential information must be held in the strictest confidence. It is to be used solely for Company purposes and not as a basis for personal gain or advantage, either during or after employment. Such information must be maintained in accordance with the Confidentiality in the Workplace Policy, and must not be disclosed, communicated to, or discussed with anyone (except those who have a business-related need to know such information in performing their responsibilities), unless such disclosure is required or protected by state and federal law or the Company has approved public disclosure of the information. Employees should direct any questions regarding confidential information to their supervisor/manager.

134.   Fisher and Wing intentionally violated HERCO's policy and defamed Apostolidis when they spoke to employees at HERCO and members of the general public regarding the circumstances surrounding Ms. Apostolidis' termination and her need to provide care for her son, who was suffering from a serious medical condition.

135.   Following her termination in September 2021, Apostolidis learned through the Hershey community that Fisher and Wing engaged in a concerted effort to share untruths regarding Apostolidis within the Hershey community, by communicating such untruths to employees and the community.  Those untruths included the following:

a.  In or about October 2021, Nancy Garver, customer of MeltSpa and client of Apostolidis contacted MeltSpa to schedule an appointment with Apostolidis. Fisher advised Ms. Garver that Apostolidis "quit".

b.  In or about October 2021, Samantha Fisher called Courtney Miller, a customer of MeltSpa and client of Apostolidis and left a voicemail message stating that Apostolidis "quit because she (Apostolidis) decided she didn't want to work at MeltSpa anymore."

c.  In or about November 2021, Wing was receiving a manicure from nail technician, Hailey, at MeltSpa, when Wing publicly discussed Apostolidis.  Wing stated the following:  "Can you believe Penni quit?".  Other employees of MeltSpa and guests of MeltSpa could hear Wing's statement.  One employee advised Wing that she felt very uncomfortable with the conversation and that it was unprofessional.

d.  In or about December 2021, Wing was receiving a hair service from Deanna Chubb, hair stylist at MeltSpa, when she publicly discussed Apostolidis,

stating that Apostolidis "quit". Other employees of MeltSpa and guests of MeltSpa could hear Wing's statement.

136.   Fisher and Wing as management employees of HERCO communicated to employees and clients that Apostolidis quit her employment.

137.   Fisher and Wing's false statements were an attempt to harm Apostolidis' good reputation in the community and to harm her financially, professionally. and personally.

138.   Fisher and Wing, in their positions as Manager and Director, respectively engaged in disseminating false, destructive, and defamatory rumors about Apostolidis.

139.   As a direct and/or proximate result of the above-described actions, Apostolidis suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

140.   As a direct and proximate result of the above-described actions, Apostolidis suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, loss of retirement benefits.

141.   As a direct and proximate result of the above-described conduct, Apostolidis suffered professional injuries including, but not limited to, her professional reputation, professional development, loss of potential promotions, and loss of retirement benefits.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff, respectfully requests this Honorable Court to enter Judgment in her favor and against Defendant for damages in an amount in excess of $75,000.00, plus interests and costs of suit as well as the following:

(a)    Exercise jurisdiction over this matter;

(b)    Exercise supplemental jurisdiction over Plaintiff's PHRA and defamation claims;

(c)    Order Defendant to reimburse Plaintiff for all salary and benefits lost by her as a result of Defendant's actions, including but not limited to, front pay, back pay, and compensatory damages;

(d)    Award Plaintiff punitive, where appropriate;

(e)    Award Plaintiff all costs of this action, including reasonable attorney's fees and costs;

(f)    Award Plaintiff such other and further relief as this court deems just proper and equitable.

Respectfully submitted,


/s/Peggy M. Morcom
Peggy M. Morcom, Esquire
Atty. ID No.: 92463
Morcom Law, LLC
1028 E. Chocolate Avenue
Hershey, PA 17033
Phone: (717) 298-1907
Fax: (717) 298-3232
pmorcom@morcomlaw.com
Counsel for Plaintiff


/s/James T. Podgorney
James T. Podgorney, Esquire
Atty. ID No.: 315848
Morcom Law, LLC
1028 E. Chocolate Avenue
Hershey, PA 17033
Phone: (717) 298-1907
Fax: (717) 298-3232
jpodgorney@morcomlaw.com
Counsel for Plaintiff


Date: 10/20/2023



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/21/2022

**To:** Panagiota Apostolidis
84 Harvest Mill Lane
Palmyra, PA 17078
Charge No: 530-2022-02992

EEOC Representative:           Legal Unit
267-589-9707

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

**Equal Pay** Act **(EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file **suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period

**EXHIBIT**
**_A_**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
09/21/2022

Karen McDonough
Deputy District Director

## **VERIFICATION**

The undersigned hereby verifies that the statements in the foregoing document are based upon information which has been furnished to counsel by me and information which has been gathered by counsel in the preparation of this lawsuit. The language of the foregoing document is that of counsel and not my own. I have read the foregoing document and to the extent that it is based upon information which I have given to counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the contents of the foregoing document are that of counsel, I have relied upon my counsel in making this verification. The undersigned also understands that the statements therein are made subject to the penalties of 18 Pa.C.S §4904 relating to unsworn falsification to authorities.

Panagiota Apostolidis

Date: 10/19/23

## <u>CERTIFICATE OF SERVICE</u>

I, Peggy M. Morcom, hereby certify that on the 20th day of October, 2023,

the foregoing document was filed using the Middle District of Pennsylvania's ECF

system, through which the document is available for viewing and downloading,

causing a notice of electronic filing to be served upon the counsel of record.

Lindsey E. Snavely, Esquire
Kevin M. Gold, Esquire
4201 E. Park Circle
Harrisburg, PA 17111
lsnavely@pillaraught.com
kgold@pillaraught.com

*/s/ Peggy M. Morcom*
Peggy M. Morcom, Esquire